## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CAMARK, INC.,                 \*

      **Appellant,**       \*

v.                     \*      **Civ. No. DLB-21-2867**

CHAUDHRY KHAWAR     \*
   HASNAIN TARIQ,

                          \*

      **Appellee.**

                          \*

## MEMORANDUM OPINION

Camark, Inc. ("Camark") appeals an order of the United States Bankruptcy Court for the District of Maryland denying with prejudice Camark's request to deny discharge of the debt of Chaudhry Khawar Hasnain Tariq under 11 U.S.C. § 727(a).  ECF 1; ECF 1-1.  Upon review of the parties' briefs, ECF 4 (Appellant's Br.) & 5 (Appellee's Br.), and the record, ECF 3 (Appellant's Designation of Record) & ECF 6 (Supplemental Transmittal to Appellant's Designation of Record), the Court finds a hearing on the merits unnecessary.  *See* Fed. R. Bankr. P. 8019; Loc. R. 105.6.  For the following reasons, the Court affirms the bankruptcy court's order.

## I.      Factual and Procedural Background

In 2019, Tariq filed a voluntary petition for bankruptcy relief pursuant to Chapter 7 of the United States Bankruptcy Code.  ECF 3-13, at 74.  The origins of Tariq's bankruptcy petition date back a decade.  In August 2012, Tariq bought stock in a corporation that held the rights to utilize an inspection license at a gas station facility.  ECF 3-9, at 5–7; *see* ECF 3-15, at 5.  At that time, the corporation owed a $65,000 debt to Camark, for which Tariq became liable.  ECF 3-9, at 7–8; ECF 6-2, at 22.  On September 26, 2014, Camark obtained a default judgment against Tariq in the Circuit Court for Prince George's County for the entire debt.  ECF 3-6, at 4.  Interest on the $65,000

judgment then accrued, increasing the amount Tariq owed Camark to $90,000.  ECF 3-13, at 129. The judgment was entered against "Khawar H. Tariq Chaudhary."  ECF 3-6, at 247.  On December 1, 2017, Camark sought and obtained court approval to enter the judgment retroactively against "Chaudhry K. Tariq" and "Chaudry A. Tariq."  *Id.*

In March 2019, Camark began to garnish wages from Tariq's personal bank account to satisfy the debt.  ECF 6-2, at 109.  At the time, Tariq was an auto mechanic who received paychecks from his company, MK&Z, Inc. (doing business as Old Branch Citgo Auto and Tire Center).  *Id.* at 50, 93–94; ECF 3-9, at 4.  He lived with his wife, two young children, and parents.  *See* ECF 6-2, at 37.  After the initial garnishment, Tariq began depositing his paychecks into his wife's account so that they could continue to pay living expenses for the entire family, such as the mortgage and other household bills.  *See id.* at 112, 153.

On April 4, 2019, Tariq filed a voluntary petition for bankruptcy relief.  ECF 3-13, at 74. Charles Goldstein was appointed Chapter 7 trustee to investigate Tariq's finances and administer his bankruptcy estate.  *See* ECF 6-4, at 43–44.

On May 14, 2019, Goldstein presided over a Meeting of Creditors.  ECF 3-11, at 3.  During this meeting, errors in Tariq's schedules (forms prepared by a debtor that detail the debtor's finances) were identified.  Tariq incorrectly listed his own attorney as representing creditor Camark, ECF 6-2, at 73, and he did not include all required information related to his ownership interest in MK&Z, Inc.  ECF 3-11, at 12–13.  Goldstein instructed Tariq to amend the schedules by identifying Camark's correct counsel, providing the business's tax returns and profit and loss statements, and submitting Tariq's personal bank statements for the previous three months.  ECF 3-11, at 13, 17.

One month later, on June 13, Tariq filed amended schedules as instructed, including with Camark's correct contact information.  ECF 3-13, at 125.  Camark continued to garnish Tariq's bank account.  ECF 6-2, at 113.  On July 1, after Tariq's counsel contacted Camark's counsel to notify them of the pending bankruptcy proceedings, Camark returned the money that had been garnished after the petition was filed.  *See* ECF 6-2, at 114; ECF 5, at 3*.*  After reviewing Tariq's finances, Goldstein filed a Report of No Distribution.  *See* ECF 6-4, at 25.

On July 16, Camark filed a complaint alleging that Tariq's debt was not subject to discharge in bankruptcy pursuant to 11 U.S.C. §§ 727(a)(2) and (a)(4).  ECF 3-3.  Goldstein then withdrew the initial Report of No Distribution to conduct further investigation into Tariq's financial status.  *See* ECF 6-4, at 25.  On May 3, 2021, nearly two years after Camark commenced the adversary proceeding, Goldstein filed a new Report of No Distribution.  ECF 3-15, at 32.  He stated that he conducted "a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate."  *Id*.  According to the report, none of Tariq's properties was available for distribution from the bankruptcy estate.  *Id*.

The bankruptcy court held a two-day trial on the merits of Camark's complaint on October 27 and 28, 2021.  At trial, Tariq described his family's arrangements for paying shared household expenses.  ECF 6-2, at 38.  He testified that he and other family members deposit funds into his and his wife's joint account and into his wife's account.  *See id.* at 111–12.  His wife uses these funds to pay the bills.  *See id.* at 88.  When asked who specifically provided the money for the various deposits, Tariq often responded that he did not know.  *See, e.g.*, *id.* at 94.  He explained that his father, who travels often to Pakistan, contributes to the family's bills only periodically (while stateside).  *Id.* at 64.  Tariq testified that he told the Chapter 7 trustee that his family assisted with paying the bills.  *See id.* at 59, 66.

Following trial, Judge Rice rendered an oral decision ruling that Tariq was entitled to a bankruptcy discharge.  ECF 6-4, at 45.  As a threshold matter, Judge Rice found Tariq to be a credible witness.  *Id.* at 43.  Judge Rice believed his testimony "about the family living arrangements that necessitated the use of a single bank account with a payment of the joint expenses of the multi-generational family involved here."  *Id.*  The bankruptcy court found that Tariq's depositing of his paycheck into his wife's account to avoid garnishment—"alternate arrangements" to pay his family's living expenses—"simply did not amount to the sort of misconduct that would warrant denial of discharge" under Section 727(a)(2).  *Id.* at 44.  Judge Rice acknowledged some inaccuracies in the petition and initial schedule but noted those were corrected by amendment.  *Id.* at 43.  The bankruptcy court found that "any false or inaccurate statements made by Mr. Tariq were made without any intent to deceive, mislead or defraud the Chapter 7 trustee, the Court or his creditors."  *Id.* at 44.  The bankruptcy court also found that Tariq's only source of income was his weekly paychecks from MK&Z, Inc. and that he had no other property available for distribution, a finding based largely on the Trustee's diligent inquiry into Tariq's financial affairs, the Trustee's May 3, 2021 Report of No Distribution, and the absence of any evidence that Tariq concealed or transferred any specific assets.  *See id.* at 43–44.  Accordingly, the bankruptcy court denied with prejudice Camark's request to deny the discharge.  *Id.* at 45.  The bankruptcy court then discharged Tariq's debts to Camark in the main bankruptcy proceeding.  *Id.*

Camark timely appealed.  ECF 1, at 2.

## II.     Standard of Review

The Court has jurisdiction over appeals from the bankruptcy court.  28 U.S.C. § 158.  The standard of review of a bankruptcy appeal in district court is the same standard used by appellate

courts in reviewing a district court proceeding. *See* 28 U.S.C. § 158(c)(2) (A bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts. . . ."); *see also In re Howes*, 563 B.R. 794, 804 (D. Md. 2016) (citing 28 U.S.C. § 158(c)(2)); *Conrad v. Schlossberg*, 555 B.R. 514, 515–16 (D. Md. 2016) (same). The Court thus "reviews a bankruptcy court's findings of fact for clear error and conclusions of law *de novo*." *Rosen v. Kore Holdings, Inc. (In re Rood)*, 448 B.R. 149, 157 (D. Md. 2011); *see In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014).

Factual findings are clearly erroneous "only when the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" *Citizens Bank v. Broyles (In re Broyles)*, 55 F.3d 980, 983 (4th Cir. 1995) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012). If a bankruptcy court's account of the evidence is plausible, its findings are not clearly erroneous just because the reviewing court may have weighed the evidence differently. *In re Weiss*, 111 F.3d 1159, 1166 (4th Cir. 1997) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985))); *Simone v. Donahoo*, No. GLR-12-1143, 2013 WL 360389, at *2 (D. Md. Jan. 29, 2013).

Camark challenges Judge Rice's finding that Tariq did not have intent to defraud his creditors. "The question of whether a debtor has the requisite intent is a question of fact." *In re Sandoval*, 153 F.3d 722, 1998 WL 497475, at *2 (4th Cir. 1998) (Table) (noting that, when discharge is challenged under Section 727, the bankruptcy court must determine whether a debtor had actual intent to defraud creditors). The Court thus reviews findings of intent under the "clear error" standard. *See id*. Deference to a bankruptcy court is particularly appropriate on findings of

intent, "because a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor." *Boyuka v. White (In re White)*, 128 F. App'x 994, 999 (4th Cir. 2005) (holding that district court erred in reversing bankruptcy court on issue of debtors' fraudulent intent where district court made its own credibility assessments and re-weighed evidence); *Simone*, 2013 WL 360389, at *4–5. Deference is likewise appropriate when, as here, a bankruptcy court assessed credibility while presiding over a bench trial with witness testimony. *In re Official Comm. of Unsecured Creditors for Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 235 (4th Cir. 2006).

## III.   Discussion

Camark appeals the bankruptcy court's determination of "whether [Tariq's] discharge should be denied under Section 727(a)(2) and Section 727(a)(4) of the Bankruptcy Code."[1] ECF 4-1, at 227–28. Section 727(a) permits discharge of debts "in keeping with the primary purpose of bankruptcy law, to give honest debtors a fresh start 'unhampered by the pressure and discouragement of preexisting debt.'" *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir. 1994) (citation omitted). Because of the "extreme penalty imposed by Section 727, *i.e.*, the denial of discharge, objections to discharge are construed strictly against the objecting party and liberally in favor of the debtor." *Lafarge N.A., Inc. v. Poffenberger (In re Poffenberger)*, 471 B.R. 807, 815 (D. Md. 2012). That said, Section 727(a) prohibits discharge for debtors who "play fast and loose with their assets or with the reality of their affairs." *Farouki*, 14 F.3d at 249 (citation

---

[1] In its brief, Camark at times refers to Section 727(a) as a whole (*see, e.g.*, ECF 4 at 3) and to Section 727(a)(2) in particular (*id.*), but does not specifically reference Section 727(a)(4). Because Camark's brief suggests it also challenges the denial under Section 727(a)(4), and because it does not appear to object to the bankruptcy court's framing of the issues, the Court will consider both Section 727(a)(2) and 727(a)(4). Camark does not argue that the bankruptcy court erred in denying discharge under any other provisions of Section 727(a), and the Court will not address any other potential grounds for denying discharge.

omitted).   The creditor objecting to discharge bears the burden of proving its Section 727(a) objection by a preponderance of the evidence.   *Id*.  If the creditor establishes a *prima facie* case, the burden shifts to the debtor to provide explanatory evidence.  *Id.*  Nevertheless, the "ultimate burden rests with the creditor."  *Id*.

Section 727(a)(2) provides that a Chapter 7 debtor shall be granted a discharge unless "the debtor, with intent to hinder, delay, or defraud a creditor or an office of the estate, . . . has transferred, removed, destroyed, mutilated, or concealed" property of the debtor within one year before filing the bankruptcy petition, or property of the estate after filing the bankruptcy petition. 11 U.S.C. § 727(a)(2).  To obtain a denial of discharge under Section 727(a)(2), a creditor must establish: (1) a transfer of property, (2) belonging to the debtor for (a)(2)(A) or belonging to the estate for (a)(2)(B), (3) within one year before the date of the petition filing for (a)(2)(A) or after the date of the filing of the petition for (a)(2)(B), (4) with the intent to hinder, delay, or defraud a creditor or officer of the estate.  *See id.*; *In re Sieber*, 489 B.R. 531, 545 (D. Md. 2013).

Section 727(a)(4) provides that a Chapter 7 debtor shall be granted a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath . . . [or] (D) withheld from an officer of the estate . . . any recorded information . . . relating to the debtor's property or financial affairs."  11 U.S.C. § 727(a)(4).  To be denied a discharge under Section 727(a)(4)(A), a debtor "must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with the intent to defraud."  *In re French*, 499 F.3d 345, 352 (4th Cir. 2007) (quoting *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987)).  The statement must materially relate to the bankruptcy case.  *In re Sieber*, 489 B.R. at 554.  To be denied a discharge under Section 727(a)(4)(D), a debtor must have "knowingly and

fraudulently" withheld documents related to the debtor's property or financial affairs from an officer of the estate. *In re Abell*, 549 B.R. 631, 675 (D. Md. 2016).

Thus, to obtain a denial of discharge under Section 727(a)(2) or Section 727(a)(4), Camark must prove that Tariq had the requisite intent.[2]  *See In re Poffenberger*, 471 B.R. at 816 (finding of fraudulent intent warranted denial of debtor's discharge under Section 727(a)(2)); *In re French*, 499 F.3d at 352 (recognizing that intent to defraud is an "essential element" of a Section 727(a)(4)(A) discharge denial.  Direct evidence of intent is rare because "a debtor is unlikely to testify directly that his intent was fraudulent" or otherwise unlawful. *Williamson*, 828 F.2d at 252 (citation omitted); *In re Poffenberger*, 417 B.R. at 819.  Courts, therefore, often rely on circumstantial evidence, a course of conduct, or reckless indifference to the truth to infer fraudulent intent. *In re White*, 128 F. App'x at 998; *In re Poffenberger*, 417 B.R. at 816.  When assessing a Section 727(a)(2) claim that a transfer is fraudulent, courts also consider eight badges or indicia of fraud:

> (1) whether there is a lack or inadequacy of consideration for the transfer; (2) whether there is a family or insider relationship between the parties; (3) whether there is some retention of possession, benefit or use of the property in question by the debtor; (4) whether the financial condition of the debtor before and after the transfer is suspicious; (5) whether there is a pattern or series of transactions after the onset of the financial difficulties or pendency of threat of suit by creditors; (6) whether there is a suspicious chronology of events and transfers; (7) whether the debtor attempted to keep the transfer a secret; and (8) the proximity of the transfer to the debtor's bankruptcy filing.

*In re Poffenberger*, 471 B.R. at 816 (citing *In re Sandoval*, 1998 WL 497475, at *2).

---

[2] Camark argues primarily that Tariq possessed fraudulent intent.  *See, e.g.*, ECF 4, at 11 (listing ways defendant's "intent to defraud" allegedly can be inferred).  Because Section 727(a)(2)'s intent language is worded in the disjunctive (hinder, delay, *or* defraud), a debtor without fraudulent intent but with the intent to hinder or delay still could be denied discharge. *In re Sieber*, 489 B.R. at 545.  The Court addresses intent to hinder or delay (in addition to fraudulent intent) *infra* Section III.B.

The bankruptcy court ruled that Camark did not prove that Tariq had fraudulent intent. ECF 6-4 at 44-45. Camark raises several arguments on appeal challenging this ruling. Specifically, Camark argues that the Bankruptcy Court erred in relying solely upon Tariq's trial testimony about sources of money without considering his deposition testimony; finding that Tariq's only income was his reported weekly salary; finding that any inaccurate statements by Tariq did not rise to the level of defrauding a creditor; relying on the trustee's Report of No Distribution, despite Tariq's alleged misstatements, omissions, and use of aliases; and finding that Tariq's deposit of money into his wife's account was an alternate arrangement for payment of living expenses rather than a fraudulent transfer of money. *See* ECF 4, at 13–15; ECF 2-1, at 1–2. Camark focuses on three types of conduct that it claims show Tariq acted with fraudulent intent: (1) deposits into his wife's bank account and their joint account and his failure to identify these deposits as income; (2) diversion of his weekly income into his wife's bank account; and (3) various misrepresentations to the Chapter 7 trustee. Upon review of the record, and giving due deference to Judge Rice's determination of Tariq's credibility, the Court finds that the bankruptcy court's finding that Tariq did not have fraudulent intent was not clearly erroneous.

### A.  Family Deposits into Bank Accounts

Camark advances two main arguments about the unaccounted-for deposits into Tariq's wife's account and their joint account: they were fraudulent transfers of money, and it was fraudulent for Tariq not to report them as income.

First, Camark contends that Tariq fraudulently transferred at least $156,925 from his business MK&Z, Inc. into his wife's account and their joint account between August 2017 and October 2019. ECF 4, at 11. Camark asserts that the bankruptcy court erred in relying solely on Tariq's trial testimony that the deposits were from family members for shared living expenses,

rather than improperly-diverted MK&Z, Inc. funds.  *Id.* at 13–14.  Camark characterizes Tariq's trial testimony as "wholly at odds" with his deposition testimony.  *Id*. at 13.

The bankruptcy court found that these deposits were not fraudulently diverted business funds.  ECF 6-4, at 44 ("No evidence was introduced of the existence of any specific asset that was concealed or transferred by Mr. Tariq.").  Judge Rice "believed [Tariq's] testimony" that the deposits were family member contributions for "[multi-generational] family living arrangements that necessitated the use of a single bank account" to pay joint expenses.  *Id*. at 43.  Tariq's trial testimony was not, as Camark argues, at odds with his deposition testimony on this topic.  Indeed, Camark's counsel and Judge Rice agreed during closing argument that Tariq's deposition testimony on this point was substantially the same as at trial:

> MR. BASILE: I repeatedly asked him [during deposition] where do these deposits come from? . . . And every time his answer to me was I don't know.  I don't know. I don't know.  And that was his answer over and over and over again was I don't know.
>
> THE COURT: Now, I don't need the deposition transcript to know that because his testimony in trial is th [sic] same effect.
>
> MR. BASILE: Yes, yes correct, Your Honor, and I won't read it to you.  I won't take up the Court's time on that. . . .

ECF 6-4, at 13.  Both in deposition and at trial, Tariq described his family's financial arrangement and stated that he did not know which family member was the source of each deposit.[3]  In trial, he said that he explained his family's arrangement to the trustee.[4]  It is entirely plausible, as Judge Rice found, that the deposits into accounts managed by Tariq's wife were financial contributions of family members to pay for the shared bills of a multigenerational household.  It was, therefore, not clearly erroneous for the bankruptcy court to conclude that Tariq did not possess intent to defraud when testifying about the source of the deposits and that he did not fraudulently transfer business funds into the accounts to avoid creditors.  *See In re Weiss*, 111 F.3d at 1166.

Second, Camark argues that Tariq's "intent to defraud can be deduced from the fact that he failed to disclose any of the deposits" as income.  ECF 4, at 11.  According to Camark, the bankruptcy court erred by not finding that the deposits were income.  *Id*. at 14.  The bankruptcy court instead concluded that Tariq's only source of income was his weekly paychecks from MK&Z, Inc.  ECF 6-4, at 43.

---

[3] At trial, Tariq testified that "every time [my father] comes back he does assist me with the bills, yes.  He has helped me with it," and "My testimony is I have borrowed money from my sister, younger sister, to help me with the bills . . . . [I]t was over multiple times when I borrowed money from her so I couldn't tell you exactly did I borrow it in November, December, February."  *See* ECF 6-2 at 64–65.  At deposition, Tariq testified:

> Q. So where was the money that was coming into your account as deposits [coming from]?
>
> A. Contribution from my father.
>
> W. Okay.  Because you said you didn't know.
>
> A. No, because you were referring to particular transactions.  I don't know exactly where this particular money came from.

ECF 3-9, at 21.

[4] For instance, Tariq testified that "I told the Trustee my father helped me with my bills and I borrowed money from my sister."  ECF 6-2, at 77.

The Court need not decide the issue of whether the deposits constituted income.  Even if the deposits were income, the bankruptcy court determined that Tariq's failure to designate them as such was not done with fraudulent intent.   ECF 6-4, at 44 ("Based on consideration of the – of all of the evidence, the Court finds that any false or inaccurate statements made by Mr. Tariq were made without any intent to deceive, mislead or defraud the Chapter 7 trustee, the Court or his creditors.")  Regardless of whether the family contributions towards shared household living expenses technically constituted income that Tariq should have reported to the Trustee, it is plausible that Tariq authentically did not believe money earned by family members should be reported as his income.  The bankruptcy court's determination regarding Tariq's failure to report the deposits as income was thus not clearly erroneous.[5]

### B.  Diversion of Weekly Salary

The bankruptcy court found that Tariq's diversion of his salary into his wife's account to avoid garnishment was a permissible "'alternate arrangement' for the payment of living arrangements."  ECF 6-4, at 44.  Camark first garnished Tariq's account in March 2019.  ECF 6-2, at 109.  Tariq testified that he began diverting his salary that month.  *Id*. at 113.  He filed for bankruptcy on April 4, 2019 and continued diverting his salary to his wife's account during April and May.  ECF 3-9, at 118–20.  Camark argues that the bankruptcy court erred in concluding that Tariq did not act with fraudulent intent when he diverted his salary into his wife's account.  Camark

---

[5] Camark's argument that the bankruptcy court erred in finding Tariq's debt dischargeable because he underreported MK&Z, Inc.'s value fails for similar reasons.  *See* ECF 4, at 11.  Even if Tariq was incorrect in valuing his interest in the business at $37,500 (after valuing it higher in his 2018 tax return), the bankruptcy court determined that any inaccurate statements were made without intent to deceive, mislead, or defraud.  ECF 6-4, at 20, 44.  For reasons already discussed, the Court defers to the bankruptcy court's assessment of Mr. Tariq's credibility.  Without intent to defraud, Camark cannot satisfy Section 727(a)(4) by pointing to Tariq's undervaluing of his business.

stresses that Tariq redirected these funds for the "admitted purpose of evading payment" to Camark. ECF 4, at 15. Specifically, Camark argues that this diversion of income carries all of the badges of fraud under Section 727(a)(2). *Id*. It claims that the transfers from husband to wife, unsupported by consideration, were made shortly before Tariq's bankruptcy filing, when Tariq was in a weak financial condition. *Id*.

Courts have found fraudulent transfers under circumstances far more extreme than those presented here. In *In re Poffenberger*, a debtor owned a family concrete company. 471 B.R. at 811. His children created a new concrete company that operated under a different name but out of the same plant, bought the debtor company's mixing vehicles (financed by debtor and his wife through an undisclosed loan), hired debtor as their employee, and proceeded to bill $690,000 to debtor's former customers—all in under a year. *Id.* at 812–13. The bankruptcy court found that seven of eight badges of fraud were present and denied the debtor a discharge under Section 727(a)(2). *Id.* at 816. Likewise, in *In re Sieber*, the bankruptcy court denied discharge where a debtor sold ownership interests and concealed proceeds, just before conversion of the case to Chapter 7 (at which time a trustee would be able to stop him from using proceeds "for whatever purpose he saw fit without accounting to his creditors"). 489 B.R. at 547. His operating reports were so inaccurate and incomplete as to "[make] it impossible for the [trustee] and creditors to monitor" his operations. *Id.* The debtor admitted that "his entire bankruptcy case [was] a moving target resulting from his inconsistent statements and actions." *Id.* at 543. Here, by contrast, Tariq consistently testified that his family had a longstanding arrangement to share finances to pay household bills. Though Tariq does admit to diverting his salary to his wife's account to avoid creditors' garnishment, it is plausible that he did so intending to meet his family's needs, rather than to conceal assets or defraud creditors. *See* ECF 6-2, at 112 ("I was holding the Creditors from

freezing the money so I could keep a house over, a roof over my kids' head.  So I don't lose the house.").  No evidence was introduced that his wife used these funds for business purposes (or any purpose other than household living expenses).  The bankruptcy court gave credence to Tariq's live testimony and found that he did not possess fraudulent intent.  Under these circumstances, it was not clearly erroneous for the bankruptcy court to do so.

Though Camark primarily focuses on Tariq's alleged intent to defraud, the Court also addresses whether the bankruptcy court erred in determining that Tariq did not intend to hinder or delay his creditors within the meaning of Section 727(a)(2).  EFC 4-1, at 44.  As discussed, Tariq acknowledged that after Camark first garnished his personal bank account in March 2019, he diverted his salary to his wife's account.  ECF 6-2, at 113.  Once he filed the bankruptcy petition on April 4, though, Tariq's diversion of earnings to his wife's account could not have violated Section 727(a)(2)—regardless of his intent—as it was not considered property of the estate.  *See* 11 U.S.C. § 541(a)(6) (excluding from property of the estate "earnings from services performed by an individual debtor after the commencement of the case"); 11. U.S.C. § 727(a)(2) (prohibiting debtor from transferring "property of the estate" after petition is filed).

The inquiry thus becomes whether Tariq transferred his earnings with intent to hinder or delay between March and April 4, 2019.[6]  The bankruptcy court found he did not.  Tariq consistently testified that his main goal, rather than thwarting Camark, was to keep his family housed and fed.  This intention is a far cry from that of the debtor in, for example, *In re Greene*,

---

[6] Notably, given that Tariq did file his petition for bankruptcy on April 4, Camark may not have been entitled to its garnishment in March 2019 because it occurred during the preference period that permits the trustee to recover payments to creditors made within 90 days before filing.  *See* 11 U.S.C. § 547(b); *In re Barefoot*, 952 F.2d 795, 796 (4th Cir. 1991) (finding trustee could set aside payment to unsecured creditor because transfer occurred within ninety-day preference period).  The inquiry under Section 727(a)(2), however, turns on whether Tariq possessed intent to hinder or delay, regardless of whether transfer actually harmed the creditor.

who also admitted that he was motivated by a desire to prevent a creditor from executing, but for a very different purpose.  202 B.R. 68, 72 (D. Md. 1996).  In that case, the debtor transferred funds from his failed medical supply business to his second medical supply business to "preserve the assets in order to pay other suppliers and creditors" and keep his business afloat.  *Id.*  Here, Tariq did not attempt to "rob Peter to pay Paul" for business purposes.  *Id.* at 73.  It is plausible that once the first garnishment occurred, he diverted his salary because he intended to meet his family's basic needs.  As the bankruptcy court correctly concluded, such intent does not rise to the "serious level of misconduct that would warrant the extraordinary penalty" of denial of discharge.  ECF 6-4, at 43; *see In re Sieber*, 489 B.R. at 544 (describing denial of discharge as an "extreme penalty"); *see also Minh-Vu Hoang v. Lowery*, 469 Md. 95, 116 (Md. 2020) (explaining that "denial of discharge is an extreme sanction . . . reserved for the most egregious misconduct by a debtor" (citation omitted)).  This conclusion is consistent with the mandate that a creditor's objections to discharge are construed liberally in favor of the debtor and strictly against the debtor.  *In re Poffenberger,* 471 B.R. at 815.

### C.  Other Alleged Misrepresentations

Camark finally contends that Tariq knowingly and with fraudulent intent misrepresented or withheld material information from the trustee, warranting a denial of discharge under Section 727(a)(4).

Camark claims that Tariq made a false oath when he wrote his own former counsel's name and address, rather than Camark's, where he was supposed to list creditors' contact information.  ECF 4, at 2.  Camark speculates that Tariq did so because he did not want to notify Camark of the bankruptcy, for fear it would prompt Camark to examine his finances more closely.  *Id.* at 4, 12.  Tariq contends that his failure to list Camark's counsel was a mistake, that he had no incentive to

conceal from Camark a bankruptcy petition that he filed to stop Camark's garnishment, and that he corrected the mistake. ECF 5, at 9. Camark argues that the bankruptcy court erred in finding that Tariq's inaccuracy did not rise to the level of serious misconduct warranting denial of discharge. ECF 4, at 14. The Court disagrees. In his initial schedule, Tariq identified Camark as the creditor and $90,000 as the debt amount. ECF 3-13, at 98. That he listed his attorney as Camark's attorney obviously was a mistake. He could not possibly have believed he could avoid an examination of his finances by listing his attorney as Camark's. Once the mistake was pointed out to him, he immediately identified the correct counsel. *Id.* at 129. Tariq's explanation that the error was a mistake is completely plausible. Thus, the bankruptcy court did not commit clear error in assessing Tariq's intent in this instance.

Camark next argues that Tariq falsely stated on his petition that he has never used or held property under other aliases. ECF 4, at 11. Camark points to a default judgment entered by the Circuit Court for Prince George's County against Tariq, "Chaudry A. Tariq," and "Chaudry K. Tariq." *Id*. at 10. It argues Tariq's intent to defraud can be inferred because he never contested these aliases or allegations in Circuit Court. *Id.* at 11. Camark points to no evidence that Tariq himself actually used any aliases or that he held assets in any name other than his own. Camark conveniently omits reference in its brief to the trial testimony of Tariq's sister, who explained that *her* name is Chaudhry A. Tariq. ECF 6-2, at 156. She confirmed that her brother has never used her name to hold or conceal assets and that their names have been confused in the past. *Id.* at 157, 159–160.

Finally, Camark argues that Tariq's bankruptcy petition and Meeting of Creditors' testimony "was shown to be full of inaccuracies related to [his] income and assets," which means it was not an adequate basis for a Report of No Distribution. ECF 4, at 14. Camark contends that

without knowing the specific factual basis for the trustee's report, the bankruptcy court erred in relying on it. *Id.* at 14–15. The Court disagrees. Tariq amended his schedules to include business information the trustee told him he had to disclose. As discussed earlier, Tariq testified at his deposition and at trial that he informed the trustee about his family's financial arrangements and pooling of resources to pay shared household expenses. The trustee's second Report of No Distribution was issued nearly two years after Tariq filed for bankruptcy, giving the trustee ample time to investigate Tariq's finances. ECF 6-4, at 43. As Judge Rice noted, the trustee had a fiduciary duty to make "a diligent inquiry into the financial affairs of Mr. Tariq and the location of the property belonging to the estate," and his second Report stated he did just that. *Id.* at 43–44. If Camark wanted to ascertain what the trustee did or did not know, it could have deposed the trustee or called him to testify. It chose not to. It was not clearly erroneous for the bankruptcy court to conclude that any remaining "false or inaccurate statements made by Mr. Tariq were made without any intent to deceive, mislead or defraud the Chapter 7 trustee." *Id.* at 44.

## IV.     Conclusion

For the foregoing reasons, the bankruptcy court's order denying Camark's request to deny discharge of Tariq's debt under 11 U.S.C. § 727(a) and approving entry of a discharge in Tariq's main bankruptcy case is AFFIRMED. A separate Order will issue.


DATED this 19th day of September, 2022.

                                                _____
                                                Deborah L. Boardman
                                                United States District Judge